IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BRIDGET LETRICE BROWN, JANE DOE AND JOHN DOE, on behalf of themselves and all persons similarly situated, | ) ) ) ) ) | |
| | ) | Civil Action File No.: |
| Plaintiffs, | ) ) | 1:11-cv-02865-CAP-CCH |
| v. | ) ) | [On removal from the State Court |
| FIDELITY BANK, | ) ) | of DeKalb County, Georgia Case No.: 11-A-37991-4] |
| Defendant. | ) ) | |
| | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO FIDELITY BANK'S MOTION TO DISMISS

Fidelity Bank, a Georgia state-chartered bank, is trying to avoid Georgia law. First, Fidelity improperly removed this action from the State Court of DeKalb County, claiming that Plaintiff's claims arise out of federal law. But, as discussed in detail in Plaintiffs' Motion for Remand (Dkt. #7), that removal was frivolous. Indeed, one of the primary bases for removal has already been rejected by this Court in a virtually identical case. Thus, this Court has no jurisdiction and should not determine the merits of this Motion to Dismiss (which is based on inapplicable federal law), but should instead remand this action to Georgia State Court to allow that court to address the questions of Georgia law raised by Fidelity's Motion.

Even if the Court determines that it has jurisdiction and reaches the merits of

918153.1

Fidelity's motion, the motion must be denied.  Fidelity seeks to have this case dismissed on the grounds that various federal laws prevent Georgia citizens from applying Georgia's usury laws against a Georgia state-chartered bank.  This is not the law.  Contrary to Fidelity's preemption argument, the plain language of the statutes that Fidelity cites and the federal regulations interpreting those statutes all provide that States can determine what constitutes interest under their own state usury law.

Fidelity argues for federal law because it knows that, under Georgia law, it loses.  Indeed, Georgia law clearly holds that the primary question in this case— whether Fidelity's overdraft fees constitute interest for purposes of Georgia's usury statutes—is a fact-intensive question that should not, and indeed cannot, be decided on a motion to dismiss.  *See, e.g., Tribble v. State*, 89 Ga. App. 593, 80 S.E.2d 711, 714 (Ga. App. 1954) (question of whether a fee constitutes interest is question of fact for jury).  That is why Fidelity so vigorously seeks to invoke federal jurisdiction and to have this case interpreted under federal law.  Lastly, and in any event, if the Court determined (1) that it had jurisdiction, **and** (2) that federal law applied, Fidelity's motion would still fail because, as alleged in the Complaint, Fidelity's overdraft fees constitute "interest" even under the federal definition.

## Facts

Fidelity issues bank cards to its customers, which can be used to make purchases or withdraw cash.  Amended Complaint ("Compl."), Dkt. # 4,

¶ 2.[1]   When a Fidelity customer uses a bank card, and the customer's available account balance is insufficient to cover the transaction, Fidelity will advance its money to the customer and complete the transaction as an "Overdraft."  Compl.  ¶ 3. When Fidelity advances its money as an Overdraft (and only when it advances its money), it charges the customer an "Overdraft Fee." Compl. ¶ 6.

Fidelity's bank card Overdraft Fees are fundamentally and materially different from the processing fees charged by banks when paper checks are returned for insufficient funds.  When a Fidelity customer swipes his or her bank card to attempt a transaction for which the customer has insufficient funds, Fidelity either **automatically and instantly** clears or **automatically and instantly** rejects the transaction (unlike the manual process associated with checks).  Further, even though the processing done by Fidelity is identical whether it clears or rejects the attempted transaction, Fidelity only charges an Overdraft Fee if Fidelity approves the transaction and advances its funds.  **Where it does not advance funds, no fee is charged**.  Compl. ¶ 7.  This demonstrates that Fidelity does no extra work and **provides no service** in connection with its bank card Overdraft Fees other than advancing cash. Compl. ¶ 8.

Fidelity also charges a Sustained Overdraft Fee if a customer's account is in overdraft for five days. Compl. ¶ 11.  Again, Fidelity renders no services in connection with the Sustained Overdraft Fee.  *Id.*  Indeed, the only reason that

---

[1]   In deciding this motion, the Court presumes that the factual allegations in the Complaint are true.  *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

Fidelity charges a Sustained Overdraft Fee is that the customer has not repaid the initial Overdraft; *i.e.*, it is a charge for a loan.    Thus, Fidelity charges these fees only in connection with the advance of its money to cover certain transactions and the fees constitute interest.  These fees result in an effective rate of interest that grossly exceeds the rate allowed under Georgia's usury laws.  *See, e.g.,* Compl. ¶¶ 93, 95.

Plaintiffs assert claims solely under Georgia law seeking damages for (1) Fidelity's violation of Georgia's civil and criminal usury statutes, (2) conversion, and (3) money had and received.

## Argument and Citations of Authority

As an initial matter, this Court need not waste time and resources addressing Fidelity's Motion to Dismiss because it is not properly before this Court.  For the reasons set forth in Plaintiffs' Motion for Remand, this case is properly before a Georgia State Court judge, and any timely Motion to Dismiss can be addressed by that Court.  *See* Plaintiffs' Motion to Remand, Dkt. # 7.  Plaintiffs submit that this Court should grant Plaintiffs' Motion for Remand and deny this motion as moot, which is precisely what this Court has already done in a virtually identical case.  *See, e.g., Griner, et al. v. Synovus Bank*, __ F. Supp. 2d __, 2011 WL 3581429, Slip Op. at 35 (N.D. Ga. July 22, 2011) (citations to Slip Opinion attached to Remand Motion as Exhibit A, Dkt. # 7-2) ("*Griner* Slip Op.").

Should the Court reach the merits of Fidelity's motion, it should be denied. First, Fidelity's brief focuses on case law that is largely irrelevant to the issues

before this Court.  In its discussion of whether overdraft fees are interest, Fidelity's brief contains more than 25 citations to federal authority, and ***does not cite a single Georgia case***.  But there is no reason to apply federal law and this federal focus is an invitation to error.  The federal authority that Fidelity cites is irrelevant because Georgia law controls this case.  And under Georgia law, plaintiffs have stated a claim.

Second, even if the Court were to apply federal law, Fidelity's Overdraft Fees, as alleged in the Complaint, constitutes usurious interest.  At a minimum, there is a fact dispute on this issue, which cannot be resolved at the motion to dismiss stage.

## I.      Georgia Law Is Not Preempted Because the Various Federal Laws Cited by Fidelity Allow State Law Usury Claims.

Fidelity wrongly argues that three different federal statutes preempt Georgia law.  The statutes Fidelity cites do not "completely" preempt Plaintiffs' claims, and they do not "conflict" with Plaintiffs' claims such that the Court could imply federal preemption.

As an initial matter, Fidelity's argument ignores the strong presumption against federal preemption.  The Supreme Court has made clear that

> In all pre-emption cases, and particularly in those in which Congress has "legislated … in a field which the States have traditionally occupied," we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act **unless that was the clear and manifest purpose of Congress**."

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (emphasis added); *see also Geier v. American Honda Motor Co.*, 529 U.S. 861, 907 (2000) (courts must presume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress"). The presumption against preemption is "particularly" strong where states have historically regulated a function, such as banking. *Medtronic*, 518 U.S. at 485. The Supreme Court has specifically recognized the profound local concern in regulating banking and the States' historical role:

> Banking and related financial activities are of profound **local concern**[, and] sound financial institutions and honest financial practices are essential to the health of any State's economy and to the well-being of its people. Thus, it is not surprising that ever since the early days of our Republic, **the States have chartered banks and have actively regulated their activities**."

*Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 38 (1980) (emphasis added). In fact, the states' well-established role in banking informed this Court's previous decision to find the precise claims asserted here are not preempted: "states and state laws,… remain the primary regulators of state banks…. [And] [t]he courts have long presumed that Congress does not cavalierly pre-empt state-law, particularly in those areas ... which states have traditionally occupied." *Griner,* Slip Op. at 23 (quotation marks and citation omitted).

Nonetheless, Fidelity argues that if Georgia law considers overdraft fees to be interest, then it is preempted by several statutes, including the Truth in Lending Act,

15 U.S.C. § 1601, *et seq.* ("TILA"), the Truth in Savings Act, 12 U.S.C. § 4301, *et seq.* ("TISA"), and the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1831d ("DIDA").  Fidelity is mistaken.

**A.   There is no "complete preemption" because each statute expressly allows concurrent state court jurisdiction.**

In its Motion to Dismiss, Fidelity repeats its erroneous claim that TILA, TISA and DIDA "completely preempt" plaintiffs' state law usury claims.  As detailed in the Brief in Support of Plaintiffs' Motion for Remand (Dkt. # 7-1) ("Remand Brf."), this is not correct.  Instead, each of these statutes expressly preserves concurrent state court jurisdiction.

Complete preemption is an "extraordinary" doctrine found only in very limited contexts, where a federal statute "wholly displaces" state law causes of action.  Remand Brf. at 7-8; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("extraordinary" nature of complete preemption); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (only applicable where federal law "wholly displaces" state law).  Complete preemption does not apply where a federal statute preempts some, but not all state law claims.  *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 698 (2006); *See also* Remand Brf. at 8-9.

Given this standard, there is no complete preemption here.  TILA and TISA both expressly preserve state banking laws so long as that state law is not "inconsistent" with the provisions of the federal statute.  *See* Fidelity Bank's Motion

to Dismiss (Dkt. # 6-1) ("Fidelity Brf.") at 5 n.4 & n.5; *see also* 15 U.S.C. § 1610 (TILA clause expressly preserving state law); 12 U.S.C. § 4312 (TISA provision expressly preserving state law). Because these statutes expressly preserve some state jurisdiction, they cannot be said to "wholly displace[]" state law. *Empire HealthChoice,* 547 U.S. at 698. Indeed, numerous courts have rejected the claim that TILA and TISA preempt state law usury claims. *See* Remand Brf. at 10-11 (collecting cases).

Similarly, Fidelity's argument that DIDA preempts plaintiffs' claims has already been rejected by this Court, and remains unpersuasive. *See* Remand Brf. at 11-15; *Griner,* Slip Op at 12-34 (rejecting claim, on identical facts, that DIDA complete preempts Georgia's usury laws); *see also Thomas v. U.S. Bank Nat'l Ass'n ND*, 575 F.3d 794, 800 (8th Cir. 2009) (considering "unabridged language of the statute" and concluding that DIDA does not completely preempt state law claims). Specifically, in *Griner*, this Court held that DIDA "preempts state law **only** when the interest rate it authorizes is greater than the rate that would have been allowed by the state law operating alone," and thus it does not "completely" preempt Georgia state usury claims. *Griner,* Slip Op. at 15.

Notwithstanding Judge Totenberg's opinion, Fidelity argues that "the legislative intent behind DIDA" demands complete preemption. But this is misguided. As the Supreme Court has repeatedly held, "Congress's authoritative statement is the statutory text, not the legislative history." *Chamber of Commerce of U.S. v. Whiting*, __. U.S. __131 S. Ct. 1968, 1980, 179 L. Ed. 2d 1031 (2011)

918153.1

8

(quotation marks and citation omitted).  Regardless, every court to consider the full statutory text has determined, as Judge Totenberg did, that DIDA preserves rather than extinguishes concurrent state jurisdiction over interest-rate regulation so long as the state limits are higher and thus do not inhibit federally-insured state banks from competing on the same terms as National Banks.  *Griner*, Slip Op. at 16.  Further, as Judge Totenberg made clear, the interpretation of DIDA that allows state usury laws to govern state banks so long as the state usury limit is higher than the federal limit "is in harmony with the drafters' intent to end discrimination against state-chartered depository institutions."  *Id.* at 22.  Fidelity cannot refute this conclusion.  *See also* Remand Brf. at 12-14 (discussing DIDA's intent).

Fidelity's only other argument appears to be that because overdraft fees are allegedly "authorized" by DIDA, then "overdraft charges must become part of the calculation of the federal interest rate for purposes of DIDA preemption…"  Fidelity Brf. at 18.  Without further analysis, Fidelity asserts that "taking overdraft charges into account, the federal interest rate authorized by [DIDA] clearly exceeds the 16% APR or 5% MPR allowed under the Georgia usury statutes."  *Id.*

Again, Fidelity is wrong.  As a factual matter, the Complaint alleges that at all relevant times the interest rate allowed by Georgia law exceeded the interest rate set forth in DIDA § 1831d(a).  Compl. ¶ 25.  Further, even if federal law permits the charging of overdraft fees like those alleged in the Complaint, there is no reason to conclude it authorizes the usurious *amount* of those fees.  And, there is certainly no reason to conclude that this purported authorization of overdraft fees is intended to

918153.1

9

increase the total usury limit for purposes of DIDA to include the extraordinarily

high effective interest rates that Fidelity charges in the form of its overdraft fees.

*See, e.g.* Compl. ¶ 91 (Fidelity's overdraft fees can carry interest rate of 112,129%).

**B.    A determination that overdraft fees are interest under Georgia Law would not conflict with TILA or TISA.**

Fidelity also argues that TILA and TISA preempt Georgia's usury laws

because those laws allegedly conflict.  But, the statutory language and the

implementing regulations for both TILA and TISA make clear that these statutes

merely require certain disclosures of information.  They do not regulate usury, or the

amount of interest that a bank may charge.  Thus, TILA and TISA don't regulate the

same conduct as Georgia's usury laws, and there can be no conflict.

Congress defined TILA's statutory purpose as limited to "assur[ing]

meaningful disclosure of credit terms" and "protect[ing] the consumer against

inaccurate and unfair billing and credit card practices."  15 U.S.C. § 1601(a); *see*

*also, e.g. Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1068 (11th Cir. 2004)

(stating TILA's goal as "providing meaningful and timely disclosure of important

credit terms").  The implementing regulation, "Regulation Z," specifically states that

it "does not generally govern charges for consumer credit...."  12 C.F.R. § 226.1(b),

and that TILA **only** impacts state laws that provide "inconsistent **disclosure**

**requirements**."  12 C.F.R. § 226.28(a) (emphasis added).

Like TILA, TISA deals only with certain disclosure requirements for savings

accounts, which are irrelevant to this case.  *See, e.g.* 12 U.S.C. § 4301 (stating

TISA's purpose as to "**require the clear and uniform disclosure** of" certain rates

of interest and fees so that consumers can "make a meaningful comparison" between

deposit accounts) (emphasis added); 12 C.F.R. § 230.1 (implementing regulation

articulating same disclosure-related purpose).   Neither plaintiffs' claims nor

Georgia's usury laws impact required disclosures under TILA or TISA.  Plaintiffs'

claims merely implicate the amount that banks may charge for the advance of

money.  The conduct governed by Georgia's usury laws and challenged by Plaintiffs

is outside the scope of TILA and TISA and cannot conflict.

        Further, it is clear that State law can reach very different conclusions

regarding contracts and other aspects of a loan without being inconsistent with the

federal disclosure requirements.  For example, the Eleventh Circuit has held that

whether a state law determines that a consumer has entered into a contract for credit

is irrelevant to whether a credit transaction has been "consummated" for TILA

purposes.  *Bragg*, 374 F. 3d at 1066.  The Eleventh Circuit stated that "although

state law is determinative of when a contractual relationship is created, it has nothing

whatsoever to do with how the transaction is to be characterized for [TILA]

purposes."  *Id.*  (quotation marks and citation omitted).

        Similarly here, whether overdraft fees constitute interest for purposes of

Georgia's usury laws "has nothing whatsoever to with how the transaction is to be

characterized for TILA purposes."  *Id.*  There is no reason that a set of charges

cannot be exempt from federal disclosure requirements under both statutes, but still

918153.1

subject to state limits on the interest rate that a lender can charge.[2]

### C.    DIDA does not conflict with Plaintiffs' application of Georgia's usury laws, and thus does not preempt them.

Fidelity argues that if overdraft fees are considered interest under Georgia law, then Georgia's usury scheme "conflicts" with DIDA.  But the federal law at issue **expressly** allows Georgia to use its own definition of interest for purposes of state usury law, and thus, there can be no conflict.  Specifically, 12 C.F.R. § 7.4001(c), the same regulation that provides the federal definition of interest on which Fidelity relies, explicitly states that the federal definition **does not preempt or change state law definitions of interest**:

> The Federal definition of the term "interest" in paragraph (a) of this section **does not change how interest is defined by the individual states (nor how the state definition of interest is used) solely for purposes of state law**.

12. C.F.R. § 7.4001(c) (emphasis added).  If § 7.4001(a)'s definition of interest "does not change how interest is defined by the individual states," that must mean

---

[2]    This is not a close case because the Georgia law at issue does not address disclosure requirements.  In fact, even state laws that specifically provide for disclosure requirements are not preempted unless inconsistent.  *See, e.g.*, *Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 457 (D.N.J. 2007) (TISA's preemption savings clause "would suggest that a state may impose additional disclosure obligations, such as may be imposed under the Consumer Fraud Act by New Jersey") (*citing* 12 U.S.C. § 4312).  And the implementing regulations under both statutes provide a detailed process for determining whether the disclosure obligations in fact conflict. *See, e.g.* 12 C.F.R. § 226.28.

that DIDA's definition of interest does not supersede or preempt Georgia's definition, particularly where, as here, the term "interest" is used solely for the purpose of **Georgia's** usury laws.   *See Video Trax, Inc. v. NationsBank, N.A.*, 33 F. Supp. 2d 1041, 1051-52 (S.D. Fla. 1998), *aff'd*, 205 f.3d 1358 (11th Cir. 2000) ("[t]he Office of the Comptroller of the Currency has declared that the federal definition of 'interest' does not take precedence over the manner in which states define the term.") (emphasis added).   In short, if the federal law's objective was to preempt state usury law or state definitions of "interest," § 7.4001(c) would provide that the federal definition of "interest" applies even in state-law causes of action. The regulation says the exact opposite.

### D.      Fidelity's reliance on federal law is misplaced.

For the reasons set forth above and in the Motion for Remand, this case is ***not*** governed by federal law and the federal definition of interest does ***not*** apply.  Yet, the Motion to Dismiss relies almost exclusively on federal cases interpreting the federal definition of interest.  Those cases are irrelevant because they do not address whether the fees at issue here constitute interest ***under Georgia law***.  Fidelity fails to cite a single Georgia case defining interest, but Georgia law differs from federal law, and makes clear that the question of whether Fidelity's overdraft fees constitute interest is a question of fact that cannot be determined at this stage.

918153.1

13

**II.    Plaintiffs have stated a claim because, as alleged, Fidelity's Overdraft Fees are interest under Georgia law.**

Georgia law allows interest up to 16% per annum simple interest on loans of under $3,000.  *See* O.C.G.A. § 7-4-2.  Interest above that rate constitutes civil usury under O.C.G.A. § 7-4-10(a), and interest that exceeds 5% per month constitutes criminal usury under O.C.G.A. § 7-4-18(a).   If Fidelity's Overdraft Fees are "interest," then the rate far exceeds Georgia's usury limits. [3]

**A.    Plaintiffs have alleged facts to show that the fees are interest.**

Plaintiffs have alleged sufficient facts for this Court to find that Fidelity's Overdraft Fees constitute interest under Georgia law, particularly at the motion to dismiss stage.  Georgia's civil usury statute defines interest as "a **charge for the use of money** computed over the term of the contract at the rate stated in the contract or

---

[3]     Contrary to Fidelity's argument, the Georgia Supreme Court held that violations of Georgia's **criminal** usury statute also give rise to a **civil** cause of action.  *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 271-72, 392 S.E.2d 242, 243 (1990).  Fidelity's citation to *Anthony v. American General Financial Services, Inc.*, 287 Ga. 448, 697 S.E.2d 166 (2010), is misleading.  That case dealt with civil actions for forfeiture pursuant to O.C.G.A. § 7-4-18, **not usury**.  *Anthony* in fact reaffirms *Norris* and distinguishes usury claims from the forfeiture claims at issue in *Anthony*.  *Anthony*, 287 Ga. At 459, 697 S.E.2d at 174 ("[Plaintiffs] correctly note that in *Murphy*, we cited *Norris* as **an example of when strong public policy supports imposing civil, as well as criminal, liability** for the violation of a penal statute. *Norris* **is** such an example, but as shown by the discussion of *Norris's* reasoning and roots, that was because there was an underlying statute that expressly imposed civil liability for the usurious interest at issue.") (emphasis added); *see also Moore v. Comfed Savings Bank*, 908 F.2d 834, 840 (11th Cir. 1990) (allowing civil action under Georgia's criminal usury statute).

precomputed at a stated rate on the scheduled principal balance or **computed in any other way or any other form**." O.C.G.A. § 7-4-2(a)(3) (emphasis added).  Interest under O.C.G.A. § 7-4-18 explicitly includes "commission for advances, discount, exchange, or the purchase of salary or wages; by notarial **or other fees**; or by **any contract, contrivance, or device whatsoever**. . ."  O.C.G.A. § 7-4-18(a) (emphasis added).

In Georgia, the question of whether a fee charged at the beginning of a loan constitutes interest is a question of fact: "[T]he question whether one intended to exact usury under cover of a contrivance or device, or whether the charge alleged in the contract was a bona fide one for value received, is for the jury to determine.". *Tribble v. State*, 89 Ga. App. 593, 597, 80 S.E.2d 711, 714 (Ga. App. 1954).  The Georgia Attorney General has applied that rule to overdrafts: "[W]hether a particular overdraft protection plan involves the extension of credit and the charging of interest is a **fact-intensive review**, and each situation must be considered on a case-by-case basis."  2003-9 Ga. Op. Att'y Gen. 3 (Aug. 12, 2003) (emphasis added).

In determining whether a fee is actually interest, Georgia courts have "uniformly and consistently held that a lender's charge for service, when no service was in fact rendered or to be rendered the borrower, is a charge for the use of the money advanced and is therefore interest."  *First Fed. Sav. & Loan Ass'n v. Norwood Realty Co.*, 212 Ga. 524, 531, 93 S.E.2d 763, 768 (Ga. 1956).  *See also Williams v. First Bank & Trust Co.*, 154 Ga. App. 879, 880-81, 269 S.E.2d 923, 925 (1980) (same).  Thus, where there is (1) an advance of money, (2) a fee charged, and

918153.1

(3) no service rendered in exchange for that fee, then that "fee" is actually "interest" for the purposes of Georgia's usury laws.  Of course, that is a fact intensive question.

Fidelity does not address the Georgia courts' analysis of whether a fee constitutes interest under Georgia law, because it knows Plaintiffs have met each requirement and stated a claim.  Plaintiffs' Complaint specifically alleges each of the facts necessary to prove that Fidelity's overdraft fees constitute interest:

**(1)   Plaintiffs' allege an advance of money**.  *See, e.g.* Complaint ¶ 5 (overdrafts result from Fidelity's "advance to the customer the amount of money needed to close [a] transaction"); ¶ 41 (Fidelity's systems "automatically advance the customer sufficient money").

**(2)   Plaintiffs allege a fee charged for that advance**.  *See, e.g.*, Compl. ¶ 6-7 (describing Fidelity's "Overdraft Fee" charged in connection with the advance); ¶ 11 (describing "Sustained Overdraft Fee" charges for overdraft lasting more than five days); ¶ 41 (Fidelity "charges the customer a flat fee for the advance of such money"); and

**(3)   Plaintiffs allege that no service is rendered in exchange for the fee**. Compl. ¶ 9 (Fidelity "charges … a fee for the use of money advanced and … renders no services in connection with that fee"); ¶ 42 ("Fidelity renders no services in connection with the… (a) advance, (b) charge of interest and (c) subsequent collection"); ¶ 44 (Fidelity "renders no services other than the advance of the money"); ¶ 45 (Fidelity "only charges and collects such fee when it makes an advance, and not when it declines to do so"). These allegations must be taken as true

918153.1

at the motion to dismiss stage, and are sufficient to establish Plaintiffs' claims.

**B.      Fidelity's arguments for dismissal are contrary to Georgia law.**

Fidelity argues that Plaintiffs' claims must be dismissed under Georgia law because (1) its overdraft fees are not interest because there is no "time value of money calculation" and (2) the Georgia "Credit Card Act," O.C.G.A. § 7-5-1 *et seq.*, applies and allows the charges.  Both arguments fail as a matter of law.

First, Georgia cases refute the argument that Plaintiffs had to allege a "time value of money" calculation.  *See, e.g., First Fed. Sav. & Loan*, 212 Ga. At 531, 93 S.E.2d at 768 and *Williams,* 154 Ga. App. At 880-81, 269 S.E.2d at 925 (finding a service fee to be interest without discussing a time value calculation).   Indeed, the Georgia Supreme Court found an "origination fee" charged at the beginning of a loan constituted interest under the usury statute.  *Norris*, 260 Ga. At 272-73, 392 S.E.2d at 243.  The Court held that "[w]ether it be considered a 'commission for advances,' part of 'other fees,' or a 'contrivance' or 'device,' we find the origination fee to be within the scope of the word 'interest' as it is used in O.C.G.A. § 7-4-18." *Id.  See also Williams v. Powell*, 214 Ga. App. 216, 218, 447 S.E.2d 45, 48 (Ga. App. 1994) ("loan fees" assessed at the outset of a mortgage "are considered as interest for the purposes of determining criminal usury.").

The 2003 Georgia Attorney General Opinion that on which Fidelity relies, Fidelity Brf. at 19, does not change this conclusion.  Initially, the Opinion recognized that the inquiry is "**a fact-intensive review**," requiring analysis of

918153.1

overdraft fees "on a case-by-case basis."  2003-9 Ga. Op. Att'y Gen. 3 (emphasis added).  It then concluded, consistent with Georgia cases, that an overdraft fee will avoid being categorized as interest **only if** "the lender is actually **providing a service for which the charge is assessed and** provided that **the charge bears a reasonable relationship to the cost of providing the service**."  *Id.* (emphasis added).  The Complaint negates those arguments here.  Compl.  ¶¶ 44, 45.

In addition, the Attorney General opinion does not support the argument that interest must involve a "time value calculation," because the opinion limited its discussion to the first of three interest definitions in O.C.G.A. § 7-4-2(a)(3).  The opinion did not discuss the third definition in § 7-4-2 that defines interest as a charge "computed in any other way or any other form," O.C.G.A. § 7-4-2.  The opinion also did not address overdraft fees under O.C.G.A. § 7-4-18's definition of interest, which includes as interest "notarial **or other fees**;" O.C.G.A. 7-4-18(a) (emphasis added), with no "time value calculation" requirement.

Further, even if such a "time value calculation" were required, Plaintiffs have alleged sufficient facts to support such a calculation.  Compl. ¶¶ 11, 39-44.  Fidelity imposes its Sustained Overdraft Fee when an account balance remains overdrawn for five days.  Compl. ¶ 11.  Therefore, the time factor of Fidelity's Overdraft Fee calculation is a five day term.  Fidelity advances its money up to a certain, pre-established limit.  Compl.  ¶ 39.  Fidelity sets its Overdraft Fee with knowledge of that advance limit.  Compl. ¶¶ 38-40.  A reasonable inference is that Fidelity determines the amount it will charge as its Overdraft Fee as an amount in relation to

918153.1

the pre-determined advance limit (value) and the five day term (time).

Second, the GA Credit Card Act by definition does not include Fidelity's bank card Overdrafts.  O.C.G.A. § 7-5-4(a)(1) permits "finance charges" and "other fees and charges" only in connection with a "credit card account."  The definition of a "credit card account," as provided by O.C.G.A. § 7-5-2(4) does not include Fidelity's bank cards.  O.C.G.A. § 7-5-2(4) sets out four requirements for an account to qualify as a "credit card account," including,

> (D) The domestic lender or credit card bank is to **render bills or statements** to the debtor **at regular intervals**, the amount of which bills or statements is payable by and **due from the debtor on a specified date as stated in such bill or statement or, at the option of the debtor**, but subject to the terms and conditions of the credit card account, **may be paid by the debtor in installments**.

O.C.G.A. § 7-5-2(4) (emphasis added).  Fidelity's bank card Overdrafts do not satisfy subsection "D."  Instead of rendering bills at regular intervals payable "on a **specified date** as stated in such bill or statement," or permitting Overdrafts to be paid in "**installments**," Fidelity requires that Overdrafts and Overdraft Fees be paid in full directly from the account "as accrued."  *See* Motion to Dismiss, Exhibit 1, Dkt. # 6-2 at 6 ("Deposit Agreement"); *see also*, Compl. ¶ 15 (fees are seized from customer accounts immediately).  Thus, because Fidelity's bank card agreements do not fit within the statutory definition of a credit card account under Georgia law, the

Credit Card Act does not apply.[4]

### C.   Georgia law allows Plaintiffs' claims for money had and received and conversion.

Fidelity argues that Plaintiffs' claims for conversion and money had and received are barred because Fidelity had a contractual right to the fees.[5]  Georgia law specifically provides otherwise.  First, any contract provisions requiring the payment of usurious interest are void.  *See Pave Way Constr. Co. v. Parrish*, 187 Ga. App. 428, 429, 370 S.E.2d 495, 496 (1988).  Thus there is no applicable contract with respect to the usurious interest payments and the Georgia Supreme Court has held both claims are valid.  *See, e.g.*, *Morgan v. Shepherd*, 171 Ga. 33, 39, 154 S.E. 780, 783 (1930) ("an action for money had and received, will lie for the recovery of usurious payments"); *Decatur Auto Ctr. Inc. v. Wachovia Bank, N.A.*, 583 S.E.2d 6, 9 (Ga. 2003) ("Conversion is also available for specific amounts of money placed on deposit with a bank, and for overdrafts charged by a bank on existing accounts.") (internal citations omitted); *White v. Wachovia Bank, N.A.,* 276 Ga. 817,820-21, 563

---

[4]     A Georgia Attorney General Opinion also shows that the GA Credit Card Act does not apply.  It states, "[n]onetheless, **while** the Act is not limited in scope to the typical plastic credit card, **some form of 'credit confirmation or identification' is required**." No. 85-32, 1985 Ga. Op. Att'y Gen. 75-76 (June 14, 1985) (emphasis added).  However, the customer provides no "credit confirmation or identification" to the vendor when he receives an Overdraft.  Therefore, such a transaction falls under "Georgia's general usury provisions" rather than the GA Credit Card Act.  *Id.*

[5]     Fidelity also argues that the claims for conversion and money had and received are preempted and fail because overdrafts are not interest.  These arguments are unpersuasive for the reasons discussed in Sections I and II, *supra*.

F. Supp. 2d 1358, 1371 (N.D. Ga. 2008) (denying motion to dismiss conversion claims for improper overdraft charges).

## III.   Even Under Federal Law, Fidelity's Overdraft Fees Constitute Interest.

If this Court somehow determines that it has jurisdiction, and that federal law applies to Plaintiffs' claims, then it should still conclude that Fidelity's Overdraft Fees and Sustained Overdraft Fees constitute usurious interest under DIDA § 1831d(b).  First, the cases and other authority Fidelity cites for the proposition that Overdraft Fees are not interest are inapplicable, because in virtually all of those cases, the courts relied on the fact that banks incur costs and perform extra work when they process **returned checks**.  *See, e.g. Video Trax*, 33 F. Supp. 2d at 1053 & 1056 (fees imposed for the **service** of processing bad **checks** were not interest, relying on the fact that the fees were assessed **regardless** of whether the overdraft was covered or rejected.)  Fidelity's **bank card** Overdraft Fees are very different. As alleged, Fidelity only imposes its bank card Overdraft Fee if it advances its money to the customer.  In contrast, fees imposed on returned paper checks are charged, in Fidelity's cited cases, **regardless** of whether the bank honors the overdraft because the bank must do the work required to process a returned paper check – a service provided by the bank – regardless of whether it decides to honor the overdraft.  *See, e.g.*, *id.* at 1046.

Other cases Fidelity cites show that its bank card Overdraft Fees are interest under federal law.  For example, in *Soto v. Bank of Lancaster County*, the court

recognized that overdraft fees a bank **always** charges are different from fees that the bank **only** charges when the bank honors the overdraft. *Soto v. Bank of Lancaster County*, No 08-CV-1907, 2010 WL 1257666, at *1 (E.D. Pa. Mar. 30, 2010). "According to the OCC, the overdraft fee is not interest in connection with credit extension **as long as** the bank charges the fee without regard to whether it pays the item creating the overdraft.**"** *Id.* (emphasis added). Thus, *Soto* recognized that overdraft fees that a bank charges **only when** the bank honors the overdraft (like Fidelity does) constitute interest. Therefore, under the reasoning of *Soto*, Fidelity's bank card Overdraft Fees constitute interest.[6]

Further, the OCC Interpretive Letter that Fidelity relies on is not relevant. Its focus is on whether banks are restricted from collecting overdrafts and fees from bank accounts containing public assistance funds because of debt collection laws. OCC Interpretative Letter No. 1082 (5/17/07). While the OCC merely assumed during its discussion that overdraft fees were "non-interest," the issue was neither

---

[6]    *See also Terrell v. Hancock Bank,* 7 F. Supp. 2d 812, 816 (S.D. Miss. 1998) ("[plaintiff] was charged the same amount for NSF processing fees or overdraft processing fees **regardless of whether the check was honored**"); *In re Washington Mut. Overdraft Protection Litig.*, No. CV 03-2566, 2004 WL 5046210, at * 5 (C.D. Cal. Apr. 26, 2004), *aff'd in pt., rev'd in pt.*, 201 Fed. Appx. 409 (9th Cir. 2006) ("According to the OCC, the overdraft fee is not 'interest' in connection with credit extension **if the bank charges the fee without regard to whether it pays the item creating the overdraft**."); *Nicolas v. Deposit Guar. Nat'l Bank*, 182 F.R.D. 226, 233 (S.D. Miss. 1998) ("As noted by the OCC, it is clear that the NSF fees were not imposed pursuant to a lending transaction. To the contrary, the fees are imposed **regardless of whether NSF checks are paid** by Deposit Guaranty.") (all emphasis added).

918153.1

addressed nor decided.  Therefore, this Letter is entitled to little weight.  *United States v. Mead Corp.*, 533 U.S. 218 (2001).

In addition, Fidelity's **Sustained** Overdraft Fee constitutes "interest" within the definition of § 7.4001(a) because it is a "late fee" imposed by Fidelity in connection with its advance of money to its customers.  12 C.F.R. § 7.4001(a) ("The term 'interest' as used in 12 U.S.C. 85 includes . . . **late fees**…") (emphasis added).  Plaintiffs included Sustained Overdraft Fees in their calculations of the usurious interest rates imposed by Fidelity.  Compl. ¶ 13.  Therefore, Plaintiffs alleged sufficient facts to support a claim that Sustained Overdraft Fees are interest under § 7.4001(a), and the interest rate hidden in those fees grossly violates of the rate permitted by 12 U.S.C. § 1831d(a).  Fidelity ignores this issue.

Fidelity's claim that the OCC's Federal Register discussion "conclusively determined that overdraft fees were **not** interest," Fidelity Brf. at 10, is misleading.  In fact, that federal report specifically references "deposit account **services**" as being excluded from the definition of interest.  Investment Securities; Bank Activities and Operations; Leasing, 66 Fed. Reg. 34784-01, 34786-87 (July 2, 2001).   It then goes on to discuss separately whether the definition of interest should include at least some portion of the fee "imposed by a national bank in the more common scenario when it pays a **check** notwithstanding that its customer's account contains insufficient funds to cover the check."  *Id.* (emphasis added).  The OCC then referenced commenters' "**fact-specific concerns**" on the subject.  The OCC ended, "Accordingly, we have **not** amended § 7.4001(a) to address this issue."  *Id.*

(emphasis added).  The OCC did not "conclusively determin[e]" that overdraft fees are not interest, as stated by Fidelity, and certainly do not make any determination with regard to bank card overdraft fees which are only charged when money is advanced and are not connected to any service.  Indeed, because the issue is "fact specific," the OCC ultimately did **not** amend the regulation to include or exclude overdraft fees.   Thus, even federal regulators agree that whether an overdraft fee constitutes interest is a fact specific determination that cannot be resolved on a motion to dismiss.  Therefore, even if the Court somehow determines it has subject matter jurisdiction and that DIDA applies to the claims, the Motion to Dismiss must still be denied.

## <u>CONCLUSION</u>

Because there is no federal jurisdiction in this case, this case should be remanded to the State Court of Gwinnett County as set forth in Plaintiffs' Motion to Remand.  Dkt. # 7.  If this Court denies Plaintiffs' Motion to Remand, Plaintiffs also request that Synovus's Motion to Dismiss be denied.

Respectfully submitted, this 14th day of October, 2011.

*/s/ Jason J. Carter*
Michael B. Terry
Georgia Bar No. 702582
Steven J. Rosenwasser
Georgia Bar No. 614908
Randi Engel Schnell
Georgia Bar No. 248592

                                        Jason J. Carter
                                        Georgia Bar No. 141669
                                        Mary W. Pyrdum
                                        Georgia Bar No. 940420
BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, Georgia  30309
Telephone:  404-881-4100
Facsimile:   404-881-4111
terry@bmelaw.com
rosenwasser@bmelaw.com
carter@bmelaw.com
pyrdum@bmelaw.com


                                        C. Ronald Ellington
                                        Georgia Bar No. 243800

C. RONALD ELLINGTON, ATTORNEY, PC
135 Beaver Trail
Athens, Georgia  30605
Telephone:  706-543-4684
rellington9@charter.net
Fax:  (404) 881-4111                    ***Attorneys for Plaintiffs***

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the Local Rules of the District Court for the Northern District of Georgia, I hereby certify that the foregoing pleading has been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

Respectfully submitted,


*/s/ Jason J. Carter*
Jason J. Carter
Georgia Bar No. 141669

918153.1

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and

**PLAINTIFFS' RESPONSE IN OPPOSTION TO FIDELITY BANK'S**

**MOTION TO DISMISS** by filing it with Clerk of Court using the CM/ECF system,

which automatically sent e-mail notification to the following attorneys of record for

Defendant:

> William J. Holley II, Esq.
> Eric Jon Taylor, Esq.
> Nancy H. Baughan, Esq.
> 1500 Marquis Two Tower
> 285 Peachtree Center Avenue
> Atlanta, Georgia  30303

This 14th day of October, 2011.

> */s/ Jason J. Carter*                           
> Jason J. Carter

918153.1